IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JASTER-QUINTANILLA & ASSOCIATES, INC., | § § § | |
| v. | § | A-13-CV-775-LY |
| | § | |
| AUGUSTIN TELLEZ, JR., and JASTER QUINTANILLA SAN ANTONIO, LLP | § § § § | |

### ORDER

Before the Court are Defendants' Challenge to Plaintiff's Designation of Qualified Persons Under the Protective Order (Dkt. No. 66) and Plaintiff's Opposed Emergency Motion to Designate Qualified Persons and Motion to Compel Properly Designated Documents (Dkt. No. 67), as well as the related responses, replies and exhibits. A a hearing on these motions was held on April 25, 2014.

### I. Background[1]

This suit presents a case study in how *not* to structure a business. Plaintiff Jaster-Quintanilla & Associates ("JQA") was formed in 1984 by Gary Jaster and David Quintanilla in Austin, Texas. Since 1984, JQA has used a "JQ" logo as well as the trade name and trademark "JQ." Over the years, JQA expanded to other cities with the opening of an office in San Antonio in 1992, and in Dallas in 1994. These offices regularly used the JQ marks in their business. In 1999, JQA formed new entities in both San Antonio and Dallas.[2] The San Antonio entity was Jaster-Quintanilla San Antonio, LLP ("JQSA"), and at the time of its formation David Gauthier was made a general partner

---

[1]The facts set forth below are based on the allegations of the Amended Complaint (Dkt. No. 10) and the First Amended Answer (Dkt. No. 30).

[2]The Amended Complaint states that "[t]he formation of these two partnerships was done simply to facilitate the growth and internal management of the business," and was not publicly announced. Dkt. No. 10 at ¶ 20.

in that office.  Defendant Agustin Tellez became a general partner in JQSA on January 1, 2002, when he purchased Gauthier's partnership interest.  Jaster and Quintanilla were also each a general partner in the new entities.  Tellez is now the managing partner and majority owner of JQSA,  In 2013, JQA and JQ Dallas proposed that the three entities merge into one legal entity, all sharing profits and losses.  JQSA, which maintains it was the most profitable of the three, declined.  As a result, JQA informed JQSA it could no longer use the marks at issue, and when JQSA declined to do so, JQA filed this suit.

In the suit, JQA seeks a declaration that it has the exclusive right to use the JQ marks and contends that JQSA and Tellez are infringing on the marks.  JQA asserts that there is an implied license of its marks to JQSA and Tellez, and it has the right to terminate JQSA's rights to use the trademarks. JQSA and Tellez counterclaim for a declaration that JQA abandoned the marks in question by allowing JQSA and other JQ offices to use the marks without adequately controlling the engineering services rendered by these separate entities.  They also request a declaration that JQSA has a right to use the JQ marks and assert a claim of unjust enrichment.

## II.  Analysis

There are two primary questions presented by these motions.  First, JQA seeks permission to designate employees of the Dallas office, JQ Dallas, as "qualified persons" under the Protective Order in place, thereby permitting those persons to have access to material designated "Confidential" under the order.  JQSA seeks in response to strike JQA's designation of these individuals as "Qualified Persons."  Second, JQA challenges JQSA's designation of certain documents as "Attorney's Eyes Only," contending that the documents should instead have only been designated as "Confidential."

### A.     "Qualified Person" Designations

JQSA's primary argument on this issue is that the Protective Order defines a "Qualified Person" as "such officers and employees of [a]party who are actively involved in the prosecution or defense of the case . . ." Because eight of the nine individuals JQA designated are employees of JQ Dallas and JQ Dallas is not a named party in the case, JQSA challenges JQA's right to have these people serve as "Qualified Persons" eligible to review material classified as "confidential." JQSA asserts that it competed with JQ Dallas prior to the separation on September 5, 2013, and it expects competition between the entities to increase. It requests the Court to strike the designation of all JQA designated individuals, and limit JQA to only Gary Jaster as its "Qalified Person." JQA asserts that it properly designated these individuals pursuant to the Protective Order. While JQA acknowledges that the designated individuals are "not technically JQA employees," it asserts they "are actively involved in the prosecution or defense of this case," and have signed all appropriate agreements. JQA asserts that until September 2013, JQSA shared work and information with these individuals regularly, and the fact that they are not JQA employees is of little moment. JQA also notes that JQSA did not timely object to the its designation of these individuals as "Qualified Persons," but only did so in response to the JQA's challenge to JQSA's designation of certain documents as "Attorneys Eyes Only."

The Court finds that the eight individuals may properly be treated as "Qualified Persons" under to the Protective Order. First, JQSA's position that these individuals are not entitled to see information classified as "Confidential" is undermined by its permitting them to have access to "Confidential" documents for several weeks, and its failure to object to their designation until JQA sought to have certain "AEO" documents reclassified as "Confidential." This suggests that JQSA

does not really believe it is a problem that these eight people are employees of JQ Dallas and not JQA. Second, even if JQSA's current concern is valid, § (2)(c) of the Protective Order allows additional persons to be added as "Qualified Persons" after notice and an opportunity to be heard. Under this authority the Court finds that Steve Lucy, Amanda Wheeler, Chris Story, John Hoenig, C. Rajhan Mehta, Stephanie Tsen, Thomas L. Scott, and Rachel Black are all properly designated as "Qualified Persons" pursuant to the Protective Order.

   **B.**  **Objections to Documents Designated "Attorneys Eyes Only"**

JQA next challenges JQSA's designation of certain documents as "Attorneys' Eyes Only" ("AEO"). The Protective Order only permits documents to be designated as AEO if they contain "information that is believed to be unknown to the opposing party or parties, or any employees of a corporate party," such as "product formula information, customer identification data, and certain study methodologies." Dkt. No. 37 at 3. JQA contends that three categories of documents have been over-classified: (1) e-mails to and from shared clients; (2) the identity of projects JQSA has been awarded since September 2013; and (3) fee submittals entered into by JQSA.

   **1.**  **E-mails**

JQA argues that none of these e-mails should be classified as "AEO" under the terms of the Protective Order. After a review of the e-mails, the Court agrees. While some of the e-mails discuss business JQSA has been awarded, and thus may qualify as "customer identification data," there is no basis for finding that this information was "believed to be unknown to the opposing party or parties." JQA represents that it was already aware of these clients and projects. Accordingly the Court finds that App 150-158 should not be designated AEO and grants JQA's request that the documents be reclassified as "Confidential."

### 2. Projects Awarded Since September 5, 2013

In response to an interrogatory, JQSA produced to JQA a list of its prospective projects and awarded projects since September 5, 2013. It designated the list "AEO." JQA objects to this designation because it believes some of the projects were awarded by clients that have historically been clients of both JQSA and JQA and it "believes that at least some of these projects were not a product of shared clients' conscious choice but of actual confusion."[3] It argues that its ability to investigate whether this is true is hampered by its inability to share the list with its JQA employees because of the "AEO" designation, as consulting with "Qualified Persons" at JQA is necessary to determine whether any of the post-September JQSA contracts were awarded by a firm that is also a client of JQA. JQSA responds that the contracts are properly considered "AEO" material, and that JQA's attorneys have sufficient information from which they can determine the third parties JQA needs to contact to investigate actual or potential confusion. JQSA further indicates that it is uncomfortable with JQA's employees calling its existing clients, given that JQA is a competitor and the contact could injure JQSA's relationship with that party. Its preferred option would be for the parties to send a joint letter to customers from whom both JQA and JQSA have sought contracts. JQA stated that it too preferred to make contact with these clients through the parties and not the attorneys, but it objects to being required to do so in a joint letter, and without being able to consult with JQA representatives in determining the client group to investigate.

The Court concludes that the information contained in the document at issue (Dkt. No. 67-17 at APP 145-149) regarding *actually awarded* contracts should be reclassified as "Confidential." As

---

[3] At the hearing JQA clarified that it is not at this time seeking to have potential contracts reclassified, but rather is focused only on the contracts that JQSA has actually been awarded.

counsel for JQSA had to concede at the hearing, it is likely that the fact that JQSA has been selected to be the civil or structural engineer for an ongoing project is not even something that is confidential, much less highly confidential, since it is likely publicly-available information. It is clear from the discussion at the hearing that JQSA's concern is not truly about this information being known to JQA but rather is about JQSA's worry that a contact by JQA or its attorneys to a JQSA client might damage JQSA's relationship with that client. This, however, is not a basis on which JQSA may properly classify information as "AEO." Given the "business divorce" nature of this case, injury to client relationships is an unfortunate side effect of the investigation that needs to be done to discover the facts relevant to this case. And while the parties are free to try to mitigate this collateral damage through agreements, where they are unable to agree, the Court must apply the rules and relevant orders without regard to how it might impact JQA's and JQSA's relationships with third parties who may be fact witnesses. This is one instance of that. Given that there is no evidence that this information is unknown to JQA or is in the nature of a trade secret, or that disclosure of the information to JQA's "Qualified Persons" would seriously injure JQSA, the Court will require that the information on awarded contracts be downgraded to "Confidential."

Finally, at the hearing JQA indicated that it was willing to notify JQSA when it has made contact with the awarding party (*i.e.*, the JQA/JQSA "client") on these contracts. Based on this agreement, the Court orders JQA to notify JQSA's counsel within five (5) days once it has made such contact.

    **3.**    **Fee Submittals**

Finally, though it was not the primary focus of the briefing, the parties at the hearing discussed at some length the production by JQSA of "fee submittals" with existing clients. JQSA

has designated these documents "AEO." And while it is willing to re-designate them "Confidential" if the actual fees are redacted (which by itself would be acceptable to JQA), it is not willing to do so if the JQ Dallas employees are permitted to see the documents. Once again, for the reasons set forth above, the Court finds that, other than the actual fee information, which should remain "AEO" information, the fee submittals should be re-designated "Confidential."

### III.  Order

IT IS THEREFORE ORDERED Defendants' Challenge to Plaintiff's Designation of Qualified Persons Under the Protective Order (Dkt. No. 66) is DENIED and Plaintiff's Opposed Emergency Motion to Designate Qualified Persons and Motion to Compel Properly Designated Documents (Dkt. No. 67) is GRANTED as set out above.

SIGNED this 25th day of April, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE